**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TRAVIS LASHAUN WATSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18CV451 |
| | ) | |
| DENNIS DANIELS, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 2; see also Docket Entry 3 (Brief in Support).) Respondent has moved for summary judgment on the merits, as well as on grounds of mootness, harmlessness, lack of federally cognizable relief, and non-exhaustion. (Docket Entries 9, 10.) Petitioner also has moved to amend his Petition. (Docket Entry 20.) For the reasons explained more fully below, the undersigned United States Magistrate Judge will recommend that the Court deny the instant Petition as moot or, in the alternative, on its merits, and deny the proposed amendment as futile.

### I. Background

On September 7, 2005, in Guilford County Superior Court, Petitioner pleaded guilty to two counts of felony second degree rape, conspiracy to commit second degree rape, second degree kidnapping, and possession of a stolen vehicle in cases 04 CRS 78728, 04 CRS 78731, and 04 CRS 69837, respectively. (Docket Entry

2, ¶¶ 1, 2, 4-6; see also Docket Entry 10-2 at 2-5.)[1]  After consolidating the rape offenses and consolidating the kidnapping and possession of a stolen vehicle offenses, the trial court imposed consecutive prison sentences of 96 to 125 months and 27 to 42 months, respectively.  (See Docket Entry 2, ¶ 3; see also Docket Entry 10-2 at 2-5.)  Petitioner also received a five-year term of post-release supervision ("PRS").  (See Docket Entry 2, ¶ 3.)  He did not appeal.  (See id., ¶ 8.)

Petitioner began his five-year term of PRS on April 16, 2015.  (See Docket Entry 13-4 at 1.)  On January 3, 2017, while Petitioner remained on PRS, the Post Release Supervision and Parole Commission ("PRSPC") arrested Petitioner on a warrant for post-release violations based on new, pending felony charges (id.), and detained Petitioner in the Guilford County jail "where the revocation proceeding for [PRS] was begun" (Docket Entry 3 at 1).  Petitioner appeared before the PRSPC on January 13, 2017, and signed a waiver which provided as follows:

> I do hereby waive my right to a Preliminary Hearing and [PRSPC] Hearing **until pending North Carolina criminal charges have been disposed of by the [c]ourts**.  I do understand the purpose of these hearings is to determine whether there is probable cause to believe that I have violated the condition(s) of my Parole/Conditional Release/[PRS] heretofore granted by the North Carolina Post Release Supervision and Parole Commission.  **I do also understand that I can request the Preliminary**

---

[1] Throughout this Recommendation, pin citations to page numbers refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

**Hearing to be held prior to the pending charges disposition by contacting my Probation/Parole Officer in writing**.

(Docket Entry 13-8 (emphasis in original).)

Petitioner alleges that, on May 22, 2017, the PRSPC revoked his PRS, and transferred him from the Guilford County jail to the Craven Correctional Institution. (See Docket Entry 3 at 1; see also Docket Entry 13 at 2 ("Petitioner's PRS was revoked and he was imprisoned in a [s]tate facility without cause . . . ."); Docket Entry 13-1 at 1 ("On May 22, 2017[,] I was imprisoned in . . . Craven Corr[ectional] Inst[itution] as a pretrial and prerevocation detainee.").) Petitioner pursued a grievance challenging his imprisonment for PRS violations (see Docket Entry 13-6), which the Inmate Grievance Resolution Board ultimately denied on August 4, 2017 (see Docket Entry 13-7).

On November 1, 2017, Petitioner filed a pro se "Application for a Writ of Habeas Corpus" with the trial court challenging the revocation of his PRS without a hearing, which that court denied on November 22, 2017. (See Docket Entry 2, ¶ 11(a); see also Docket Entry 2 at 16.) Petitioner did not appeal that ruling to the North Carolina Court of Appeals.[2]

On December 11, 2017, the PRSPC entered an order with regard to Petitioner's PRS which provided as follows:

---

[2] Although the Petition reflects that Petitioner "appeal[ed] to the highest state court having jurisdiction over the action taken on [his] petition, application, or motion" (Docket Entry 2, ¶ 11(d)), Petitioner has provided no details or documentation to support that assertion. Petitioner further contends that, "on or about January 19, 2018," he filed a "Motion to Dismiss" with the trial court again challenging the revocation of his PRS without a hearing (id., ¶ 11(c)(1)-(5)), but that court did not hear his Motion (see id., ¶ 11(c)(6), (7)).

-3-

> In reference to [Petitioner], convicted September 7, 2005 in Guilford County Superior Court, docket number 04CRS078728, two counts of Second Degree Rape, Conspiracy to Commit Second Degree Rape, 96 to 125 months active. He was released on five years post-release supervision on April 16, 2015 and was arrested January 3, 2017 by [PRSPC] warrant for reported post-release violations. The [PRSPC] finds that [Petitioner] is currently incarcerated for the [PRSPC's] January 3, 2017 warrant for which he has pending felony charges against him. The [PRSPC] further finds a preliminary hearing was postponed on January 13, 2017 until these pending charges have been resolved.
>
> Upon further review of his case, <u>the [PRSPC] finds that [Petitioner] has completed service of his maximum term in [his 96 to 125 month] sentence as required by N.C. [Gen. Stat. § 15A-1368.3(c)(1)] and therefore orders he be released from custody effective immediately</u>. This order does not resolve [Petitioner] of any other legal obligations such as for the pending charges in Guilford County or for the registration requirement for [his 96 to 125 month] sentence.

(Docket Entry 13-3 at 1 (emphasis added).)

In response to an inquiry from Petitioner, Mary Stevens, Chief Administrator of the PRSPC, wrote Petitioner a letter enclosing and explaining the above-quoted order of the PRSPC, which provided, in pertinent part, as follows:

> This will acknowledge receipt of your recent correspondence dated May 27, 2018 to Governor Roy Cooper. In answer to your concerns, <u>the [PRSPC] did not revoke your [PRS] for your previously-incarcerated [96 to 125 month] sentence</u>. In December 2017, the [PRSPC] rescinded or stopped further [PRS] proceedings in your case and ordered that you be released from the [PRS] requirement of [your 96 to 125 month] sentence. Enclosed is a copy of that order. This means that the five (5) year [PRS] requirement for [that sentence] was completed effective December 11, 2017 <u>because you had served your maximum sentence term</u>.

(Docket Entry 13-3 at 2 (emphasis added).)

On March 1, 2018, a jury convicted Petitioner of felony robbery with a dangerous weapon (offense date December 22, 2016),

-4-

possession of a firearm by a convicted felon (offense date December 29, 2016), and attaining habitual felon status (offense date December 29, 2016) in cases 16 CRS 92606, 16 CRS 92616, and 17 CRS 24032, respectively.  (See Docket Entry 10-3 at 2-5.)  The trial court sentenced Petitioner to consecutive terms of 96 to 128 months and 97 to 129 months in prison.  (See id.)

Petitioner subsequently filed the instant Petition on May 18, 2018 (see Docket Entry 2 at 15),[3] along with a Brief in Support (see Docket Entry 3 at 3).  Respondent then filed the instant Motion for Summary Judgment and supporting Brief (Docket Entries 9, 10) and Petitioner responded in opposition (Docket Entry 13).  He also filed a "Notification of Ongoing Pattern of Abuse" (Docket Entry 15), "Notice to the Court of Continuous and Ongoing Retalliations [sic]" (Docket Entry 16), and "Notice of Erroneous Response to Grievance" (Docket Entry 18), as well as Motion to Amend Pleading (Docket Entry 20) and supporting Declaration (Docket Entry 21).  Respondent timely opposed the Motion to Amend Pleading. (Docket Entry 22.)  Petitioner did not file a reply (see Docket Entries dated Nov. 21, 2018, to present), but did file a "Notice of Additional Violations of Petitioner's Rights" (Docket Entry 23) and "Notice of Harassment Using the Disciplinary Proceeding" (Docket Entry 24).

---

[3] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court should deem the instant Petition filed on May 18, 2018, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities (see Docket Entry 2 at 15).

-5-

## II. Ground for Relief

The Petition's sole ground for relief contends that Petitioner's "[PRS] was revoked and [he was] returned to prison without a revocation hearing and without any official determination of wrongdoing." (Docket Entry 2, ¶ 12(GROUND ONE).) The instant Motion to Amend Pleading proposes to alter the Petition's requested relief to seek not just Petitioner's release from custody but "also $11,950,000 in damages relating to imprisonment in the Dept. of Public Safety." (Docket Entry 20 at 1.)

## III. Discussion

### A. Mootness

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person <u>in custody</u> pursuant to the judgment of a State court only on the ground that he is <u>in custody</u> in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); see also <u>Maleng v. Cook</u>, 490 U.S. 488, 490–91 (1989) (holding that Section 2254 petitioner must, at the time he or she files petition, remain "in custody" pursuant to state conviction or sentence at issue (citing <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968))). The "in custody" requirement raises a threshold jurisdictional question. <u>Maleng</u>, 490 U.S. at 490 (stating that "[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States'") (emphasis in original). To meet the jurisdictional "in custody"

requirement, a petitioner need not remain in <u>actual physical custody</u> of state authorities, as well-settled law holds that an <u>ongoing</u> term of probation or parole constitutes a sufficient restraint on a petitioner's liberty to allow the petitioner to challenge a state sentence under Section 2254.  <u>See</u> <u>Jones v. Cunningham</u>, 371 U.S. 236, 242 (1963) (deeming prisoner on parole still "in custody" for habeas purposes because release from physical confinement remains conditional and "the custody and control of the Parole Board involves significant restraints on petitioner's liberty").  However, where a petitioner "elect[s] only to attack [his or her] sentences, and . . . those sentences expired during the course of the[] proceedings, th[e] case is moot."  <u>Lane v. Williams</u>, 455 U.S. 624, 631 (1982); <u>see also</u> <u>North Carolina v. Rice</u>, 404 U.S. 244, 248 (1971) ("Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter."); <u>Gutierrez-Mondragon v. United States</u>, No. 1:09CR99-1, 2017 WL 9480145, at *1 n.1 (M.D.N.C. Sept. 29, 2017) (unpublished) (Webster, M.J.) ("To the extent Petitioner has completed his federal sentence, his motion, which only attacks the length of his period of imprisonment, is . . . moot."), <u>recommendation adopted</u>, 2017 WL 9480146 (M.D.N.C. Nov. 30, 2017) (unpublished) (Tilley, S.J.).

Here, Petitioner's <u>sole</u> ground for relief contends that his "[PRS] was revoked and [P]etitioner returned to prison without a revocation hearing and without any official determination of

-7-

wrongdoing." (Docket Entry 2, ¶ 12 (GROUND ONE).) As a corollary to that argument, Petitioner also has asserted that:

> The alleged [PRS] violator ought not to be treated differently from other detainees, since the charges of the PRS violation standing against them are unproven, and in many instances, involve the same charges as those for which they are substantively detained. . . . [A] supervisee arrested for a subsequent crime has a due process right to be free from punishment for the subsequent crime until convicted of the subsequent crime. Under the due process clause, pretrial detainees cannot be punished. [Bell v. Wolfish], 441 U.S. 520, 537 .16 (1979). They can only be detained to ensure their presence at trial, and subjected to rules and restrictions that are reasonably related to jail management and security. . . . [Petitioner] should have continued to be detained in the Guilford County Jail under the conditional revocation of the PRS warrant.

(Docket Entry 13 at 3-4 (internal quotation marks and brackets omitted).)

However, the record before the Court conclusively establishes that Petitioner's active prison sentences for his 2005 convictions expired on April 16, 2015 (see Docket Entry 13-4 at 1), and that the PRSPC terminated Petitioner's PRS arising from his 2005 convictions on December 11, 2017 (see Docket Entry 13-3). Because the Petition attacks only the procedures and conditions of Petitioner's expired term of PRS, Petitioner "urg[es] . . . the correction of a sentence already served," Rice, 404 U.S. at 248, and the Court should deny the Petition as moot.[4]

---

[4] In the demand for relief, Petitioner requests that "the Court [] provide immediate release from the custody which he is held." (Docket Entry 2 at 15.) However, as Petitioner has not challenged his 2018 convictions and sentences in the instant Petition (see Docket Entries 2, 3, 13), he has not provided the Court with any basis to order his release from his 2018 sentences.

-8-

**B. Merits**

Even if the Court should find that the Petition does not qualify as moot, the Court should deny the Petition on its merits. Petitioner's contention that his "[PRS] was revoked and [P]etitioner returned to prison without a revocation hearing and without any official determination of wrongdoing" (Docket Entry 2, ¶ 12 (GROUND ONE)) fails for two reasons. First, as discussed above, the record definitively demonstrates that the PRSPC did not revoke Petitioner's PRS arising out of his 2005 convictions (see Docket Entry 13-3) and, thus, the PRSPC did not deny Petitioner his due process rights by failing to hold a revocation hearing or provide him with a "written summary of findings" (Docket Entry 2, ¶ 12 (GROUND ONE)).

Second, to the extent Petitioner decries the lack of "any official determination of wrongdoing" (Docket Entry 2, ¶ 12 (GROUND ONE)) or "probable cause determination" (Docket Entry 13 at 4), Petitioner glosses over the fact that he "waive[d his] right to a Preliminary Hearing and [PRSPC] Hearing **until pending North Carolina criminal charges have been disposed of by the [c]ourts**" (Docket Entry 13-8 (emphasis in original)). Petitioner has not contested the validity of the wavier and, therefore, cannot fault the PRSPC for adhering to its terms.

Nor did the PRSPC have any obligation to hold a preliminary (or probable cause) hearing after resolution of Petitioner's 2018 offenses. Because of Petitioner's waiver, the term of his PRS continued to run until its termination on December 11, 2017, when

-9-

the PRSPC determined, pursuant to application of its governing laws, that Petitioner had served his maximum prison term.  (See Docket Entry 13-3; see also N.C. Gen. Stat. § 15A-1368(a)(5) ("When a prisoner is serving consecutive prison terms, the maximum imposed term . . . is the sum of all maximum terms imposed in the court judgment or judgments, less 12 months for each of the second and subsequent sentences imposed for Class B through Class E felonies . . . .").  Thus, even though Petitioner waived his right to a preliminary hearing and a PRSPC hearing until after resolution of his 2018 offenses, before his trial on those offenses could occur, Petitioner reached the end of his maximum imposed prison term, and the PRSPC terminated his PRS at that time.  In other words, Petitioner's term of PRS did not extend beyond December 11, 2017, thus mooting any need for a preliminary (or probable cause) hearing after that point.  See N.C. Gen. Stat. § 15A-1368.3(c)(1) ("Supervisees who were convicted of an offense for which registration is required [as a sex offender] and supervisees whose supervision is revoked for a violation of the required controlling condition [that the supervisee not commit another crime during the period for which the supervisee remains subject to revocation] will be returned to prison up to the time remaining on their maximum imposed terms.").  Accordingly, the PRSPC did not violate Petitioner's due process rights by failing to hold a preliminary (or probable cause) hearing.

**C. Amendment**

As described in Section II, Petitioner's Motion to Amend Pleading seeks to add a request for damages. The Court should deny that proposed amendment on grounds of futility, see generally United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (identifying "futility of amendment" as basis for denial of leave to amend in habeas context), because (as Respondent correctly has observed) "[m]onetary damages are non-cognizable on federal habeas review" (Docket Entry 22 at 1).[5]

The Petition fails on grounds of mootness or for want of merit.

## IV. Conclusion

**IT IS THEREFORE RECOMMENDED** that the Petition (Docket Entry 2) be denied as moot or, in the alternative, as meritless, that Respondent's Motion for Summary Judgment (Docket Entry 9) be granted, that Petitioner's Motion to Amend Pleading (Docket Entry 20) be denied as futile, and that Judgment be entered dismissing this action, without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 21, 2018

---

[5] Similarly, Petitioner's other filings (catalogued in Section I) do not alter the conclusion that his Petition fails due to its mootness and lack of merit; instead, those filings purport to raise claims of other inmates (see Docket Entry 15) or raise claims related to events that occurred during his time in custody unrelated to the substance of the claim raised in the Petition (see Docket Entries 16, 18, 21, 23, 24).